CELINE LAURENT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Laurent v. Commissioner
Docket No. 21794-82.
United States Tax Court
T.C. Memo 1985-229; 1985 Tax Ct. Memo LEXIS 402; 49 T.C.M. (CCH) 1477; T.C.M. (RIA) 85229; May 13, 1985. William J. Falk and Mary Gassmann Reichert, for the petitioner. Frank Agostino and David R. Reed, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies of $1,039 and $1,010 in petitioner's Federal income tax for the years 1979 and 1980, respectively. The sole issue for decision is whether petitioner, a member of a religious order and under vows of poverty and obedience, earned income during the years in issue in her individual capacity or conversely, in her capacity as agent for her religious order. The parties agree that if it is determined that the income at issue was earned by petitioner in her individual capacity, the she must report such income as gross income under section 61, [1] but if it is determined that petitioner earned the income *403 at issue only as agent of her order, then such income is not reportable by her. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Sister Celine Laurent (hereinafter "petitioner") resided at Red Bud, Illinois, at the time she filed her petition in this case. During all times relevant herein, petitioner was a member, also known as a Sister, in a religious order of the Roman Catholic Church, called the Adorers of the Blood of Christ (hereinafter referred to as "the Order"). The Order was incorporated under the laws of the State of Illinois on July 24, 1886, as the Convent of the Sisters of the Precious Blood, and is a religious organization exempt from Federal Income tax. As stated in its Articles of Incorporation, the purposes of the Order are as follows: . . . to conduct schools and places of learning and to promote education, *404 to advance the cause of Religious and Social Work, to conduct hospitals and institutions for the care and treatment of suffering humanity and to do all and everything necessary or convenient for the accomplishment of any of the purposes or objects and powers above mentioned or incidental thereto. Each member of the Order is required to make vows of chastity, obedience and poverty as a precondition to membership, and petitioner undertook these vows prior to becoming a member in the Order. Petitioner executed a Declaration Concerning Remuneration in which she agreed "never [to] claim or demand, directly or indirectly, any wages, compensation, remuneration, or reward * * * for the time or for the services or work that I devote for * * * [the Order] during the time I may remain there or elsehwere in the name of or under commission from said [Order] * * *." A member who wishes to withdraw from the Order may receive official dispensation from her vows by application through her provincial superior to the general superior of the Order. In addition, some members have withdrawn from the Order without obtaining dispensation from the Church. Members who withdraw from the Order are *405 entitled to receive the personal property they owned before joining the Order, as well as property received by gift or inheritance. In addition, withdrawing members are entitled to the return of their dowries, if they had them. The procedures set forth in the Order's Constitution for the return of property to withdrawing members do not vary for members who fail to obtain official dispensation from their vows. Pursuant to the procedures of the Order outlined below, members of the Order are allowed to secure employment in furtherance of the purposes of the Order. During all years relevant herein, the Order was divided into twelve geographical provinces, each of which was administered by a Provincial Superior. The Provincial Superior, inter alia, sits on the relevant province's placement board and, as a member of the board, considers proposals of Sisters within the province regarding missions [i.e., employment] desired by the Sisters. The Provincial Superior is vested with authority to approve or disapprove a proposed mission. The granting of such approval or disapproval depends upon whether the proposed mission is in accordance with the Order's Articles of Incorporation, and *406 the Gospel of Jesus Christ, which, as interpreted by the Order, require that the mission work of a Sister in the Order relate to religious and charitable works that promote education, relieve suffering, and otherwise provide assistance to those in need. When the Provincial Superior approves of a proposed mission, such approval is effective for one year, following which the Sister must acquire reapproval for the following year. In accordance with these procedures, each Sister whose proposed mission is approved is issued a separate missioning order each year and these missioning orders (also known as obediences) are distributed to the Sisters of the Order on "Missioning Day." When a Sister takes a vow of obedience as a precondition to her membership in the Order, she expressly undertakes to subjugate her will to that of the Order and, pursuant to such vow, no Sister may accept a mission (i.e., a position of employment) without the express approval of and direction by the Order. Moreover, each Sister who receives a missioning order is under a duty to obey that order and cannot voluntarily terminate the mission without prior approval of the Order. Additionally, each Sister is under *407 a duty to abide by any direction of the Provincial Superior, even if such direction relates to the performance of the mission itself, or requires the Sister's withdrawal from the mission. [2] In fact, that Order has at times required Sisters to terminate their employment in their assigned missions. Any payments made to a Sister in respect to her mission are required to be paid over in full to the Mother House of the Order, or deposited directly to the bank account of the Mother House. Once these funds are transferred by the Sister to the Mother House, the Sister maintains no control over the Order's disposition of the funds. Moreover, if a Sister of the Order who has engaged in mission work on behalf of the Order subsequently leaves the Order and receives dispensation from her vows, she is entitled to receive no part of the money generated by her mission work while she was a member of the Order. When a Sister of the Order is missioned in a location which is not *408 impracticably far away from the Mother House of the Order, the Sister generally lives in the convent. When, however, a Sister is missioned by the Order to a location which is distant from a convent, a residence is rented for the Sister to live in, in the name of the Order. The Order generally, through its placement board, makes arrangements for a Sister's living accommodations, and any house rented by the Order for these purposes is considered within the Order to constitute a convent. Each Sister living away from the Mother House of the Order is required to submit to the Order a monthly budget statement, setting forth her living expenses, which is reviewed by the Order in accordance with established guidelines. The Order then either approves or revises the proposed budget, and pays the Sister's monthly living expenses, as approved. In addition, the Order provides its Sisters with a maximum allowance for personal expenses which, during the year at issue, was $35 per month. There is no relationship between the amount of a Sister's monthly allowance and the amount of funds, if any, generated by her mission work. If a Sister is missioned away from the Mother House of the Order and *409 she requires a telephone, the telephone is maintained in the name of the Order, unless otherwise required by the telephone company. If such a Sister requires the use of an automobile, the Order may provide her with the use of an automobile which is owned, maintained and insured in the name of the Order. Petitioner made her permanent vows of poverty, chastity and obedience in 1939 and became a permanent member of the Order at that time. Petitioner has not requested dispensation from her vows, and at all times relevant herein was an active member of the Order. Petitioner received her master's degree in library science in 1971 from the Rosary College of Library Science, and during the years in issue was employed by the Kaskaskia Library System, (an Illinois state agency) (hereinafter "the Library") as a reference librarian and inter-library loan consultant. When petitioner first contemplated an affiliation with the Library, she had already made her perpetual vows. Accordingly, prior to interviewing for, and accepting the position at the Library, petitioner sought authority from the Order to do so. In seeking authority from the Order, petitioner was questioned concerning the nature *410 of the work involved at the Library and how that work related to the purposes of the Order. After reviewing the nature of the work to be performed by petitioner at the library and determining that such work would further the purposes of the Order, the Order, by missioning order, granted petitioner's request and directed her to assume the position. When petitioner was employed at the Library, her employer was fully aware of her status vis-a-vis the Order, and such status was not objected to by the Library. During the years in issue, petitioner acted strictly in accordance with her vows of poverty and obedience. Petitioner lived in convents maintained by the Order, did not maintain a personal bank account and, when her employment required that she have access to an automobile, petitioner used a car which was owned and maintained by the Order. Petitioner received salary checks from the Library during the years in issue. Most of the checks were made payable to petitioner and the Order jointly. A few were made payable to petitioner alone. Although the Library did not impose any restrictions upon petitioner's use of these checks, upon receipt, petitioner, pursuant to her vows, immediately *411 endorsed each check over to the Order [3] and sent it to the lockbox maintained by the Order in St. Louis. After endorsing these checks, petitioner exercised no control over the funds. Respondent determined that all salary received by petitioner during 1979 and 1980 was received by her in her individual capacity, and therefore had to be reported as income on her Federal income tax return. OPINION At issue is whether amounts paid by the Library with respect to petitioner's services as a librarian are taxable income to petitioner. Petitioner contends that the income was received by her in her capacity as agent for the Order and argues that such amounts are therefore not taxable to her. Respondent maintains that petitioner received such compensation in her individual capacity, and she is therefore taxable thereon. Respondent relies primarily upon the rule that income must be taxed to its earner. Lucas v. Earl,281 U.S. 111 (1930). The facts in this case are not materially different from those presented in Schuster *412 v. Commissioner, 84 T.C.     (filed April 29, 1985), and that case controls in result here. While I still adhere to the views expressed in my dissenting opinion in Schuster, I of course accept the majority opinion in that case as the law in this Court. Accordingly, respondent's position must be sustained. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. It is the policy of the Provincial Superior or other member of the placement board to visit each Sister at her mission site in order to assure that the mission is in conformity with the objectives of the Order.↩
3. A few of the checks were not endorsed by petitioner, but there is no indication that the Order had any problem with negotiating them.↩